IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DELTAPACK, INC.,                            )
                                            )
        Plaintiff/ Counterclaim Defendant,  )
                                            )
        v.                                  )        1:10CV591
                                            )
JUNGLE GROWTH, LLC,                         )
                                            )
        Defendant/Counter Claimant,         )
                                            )
        v.                                  )
                                            )
ANA RIEVERS MACHOVEC, and                   )
JORGE RIEVERS,                              )
                                            )
        Counterclaim Defendants.            )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the Motion for Summary Judgment and for Release

of the Attachment and Bond [Doc. #74] filed by Defendant Jungle Growth, LLC ("Jungle

Growth"), and the Motion for Summary Judgment [Doc. #76] filed by Counterclaim

Defendants Deltapack, Inc. ("Deltapack"), Ms. Ana Rievers Machovec ("Ms. Machovec"), and

Mr. Jorge Rievers ("Mr. Rievers").  Defendant Jungle Growth has also filed a Motion to Seal

[Doc. #93] certain documents.  For the reasons set out below, Jungle Growth's Motion for

Summary Judgment and for Release of the Attachment should be denied, the Counterclaim

Defendants' Motion for Summary Judgment on Jungle Growth's counterclaims for fraud and

unfair or deceptive trade practices should be granted, and Jungle Growth's Motion to Seal will be denied as set forth below.

I.      FACTS, CLAIMS, AND PROCEDURAL HISTORY

This case involves a relatively straightforward contract dispute between Plaintiff Deltapack and Defendant Jungle Growth.  Plaintiff Deltapack is a North Carolina corporation which imported and supplied imprinted plastic bags to Defendant Jungle Growth, a Georgia limited liability company.  Jungle Growth filled the bags with various potting soil mixtures and sold them to retail businesses, primarily Lowe's Companies, Inc. ("Lowe's") in the southeast United States.  Deltapack claims that Jungle Growth has failed to pay invoices due and owes it a total of $253,345.83, which includes the outstanding balance on Deltapack invoices of $151,216.11, air freight costs of $18,576.72, and costs associated with printing plates of $83,553.00, plus interest on the unpaid invoices.  (Compl. [Doc. #2].)  Based on these claims, Deltapack obtained an Order of Attachment against Jungle Growth in the amount of $253,345.83, and Deltapack was required to post a $25,000.00 cash bond as security.

Jungle Growth has filed counterclaims against Deltapack and its principals, Mr. Jorge Rievers, who is the president of Deltapack, and his daughter, Ana Machovec, who is the vice-president.  Jungle Growth is asserting claims of: (1) breach of express warranties against Deltapack; (2) breach of implied warranties against Deltapack; (3) breach of warranty for a particular purpose against Deltapack; (4) breach of contract against Deltapack; (5) fraud against Deltapack, Mr. Rievers and Ms. Machovec; (6) unfair or deceptive trade practices against Deltapack, Mr. Rievers, and Ms. Machovec; and (7) expenses of litigation against Deltapack, Mr.

2

Rievers, and Ms. Machovec. (Answer and Counterclaims [Doc. #35].) Jungle Growth contends that the bags provided by Deltapack experienced fading and cracking in the sun and had insufficient ultraviolet (UV) protection, and further contends that Mr. Rievers and Ms. Machovec made false promises and representations regarding the quality of the bags.

The present suit arises from dealings between the parties that began in approximately 2007, although Jungle Growth and its President Mr. Mitchell Gray had prior dealings with Mr. Rievers and Ms. Machovec from 2000-2003, when another company affiliated with Ms. Machovec and Mr. Rievers supplied bags for the potting soil to Jungle Growth's predecessor, Piedmont Pacific. Mr. Rievers and Ms. Machovec subsequently formed Deltapack, and in 2007, Deltapack provided "trial bags" to Jungle Growth. Representatives from Deltapack, including Mr. Rievers and Ms. Machovec, visited Jungle Growth's operations in Georgia on multiple occasions regarding sales of bags. In 2008, Mr. Gray decided to contract with Deltapack to supply all of the bags that Jungle Growth would need for the next year, the 2009 season. The parties dispute the scope and terms of the agreement, although neither party seeks summary judgment as to the disputed contract terms. In general terms, Deltapack contends that the parties entered into a "Blanket Order" that was finalized in November 2008, and that purchases under that Blanket Order were made by Jungle Growth beginning with a Purchase Order for 800,000 bags in October 2008, followed by additional orders in the Spring of 2009. Deltapack contends that the prices agreed upon by the parties included only ocean freight shipping expenses, not expedited air freight charges, and that the "ultraviolet protection" of the bags would be a "6-month" UVI protection, which they considered the industry standard and which

3

was the UVI protection of the trial bags and the bags they had previously supplied to Jungle Growth's predecessor.  Finally, Deltapack contends that Jungle Growth was required to pay the costs of the "printing plates" for the bags, but that Deltapack agreed to absorb that cost if Jungle Growth continued to obtain bags from Deltapack for at least three years.  In contrast to these contentions, Jungle Growth disputes the quantities ordered and contends that the UVI protection should have been one-year protection, which it contends is the industry standard.  In addition, Jungle Growth contends that Deltapack agreed to pay the expedited air freight costs and the costs of printing plates, with no requirement that Jungle Growth continue to order bags from Deltapack for three years.  Finally, Deltapack contends that the bags provided by Deltapack were defective and nonconforming because they faded and broke.  As noted above, neither party seeks summary judgment as to these disputed contract terms or the alleged breaches.  Instead, Jungle Growth seeks summary judgment based on its contention that the statute of frauds bars Deltapack's claims, while Deltapack, Mr. Rievers, and Ms. Machovec ("the Counterclaim Defendants") seek summary judgment as to Jungle Growth's counterclaims for fraud and unfair and deceptive trade practices.  These motions will be considered in turn, and the relevant facts will be set out in greater detail as part of each of those discussions below.

II.     MOTIONS FOR SUMMARY JUDGMENT

        A.      Summary Judgment Standard

        Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in

4

favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in a light most favorable to the non-moving party.  Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact."  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact."  Id. at 718-19 (citing Anderson, 477 U.S. at 247-48).  A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment.  See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (noting that a non-moving party may not rest upon mere allegations or denials.)

B.     Jungle Growth's Motion for Summary Judgment

As noted above, Jungle Growth moves for Summary Judgment and for Release of the Attachment and Bond [Doc. #74]. In the Motion for Summary Judgment, Jungle Growth contends that there is no written agreement signed by it setting forth the terms of the agreement upon which Deltapack is suing, and that the Georgia statute of frauds therefore bars all of Deltapack's claims.  Jungle Growth argues that once Deltapack's claims are dismissed, the attachment of $253,345.83 should be released and the bond should be turned over to it.  In Response, Deltapack contends that North Carolina law applies and that, in any event, the statute of frauds does not bar the claims asserted here.

5

1.    Relevant Facts

Deltapack's claims in the case seek to recover (1) for unpaid invoices for bags that it contends were ordered by Jungle Growth in Spring 2009, which were shipped to and received by Jungle Growth during 2009 and invoiced in September and October 2009; (2) for costs of air freight shipping incurred on occasions when Jungle Growth requested expedited shipping of certain products; and (3) for the costs of the printing plates created to print the bags with Jungle Growth's name, artwork, and design.

The parties' dealings are reflected in several writings. First, in June 2008, Deltapack sent Jungle Growth a document on Deltapack letterhead entitled "Blanket Order June 2008," setting out various sizes of bags and types of bags with designated quantities and prices for each size, reflecting a total quantity of approximately 2 million bags with delivery in "September 2008/February 2009" and a note that quantities for the blanket order "may be adjusted." Mr. Gray at Jungle Growth subsequently sent Deltapack an email dated October 28, 2008, reflecting new bag sizes and a potential quantity of 800,000 bags. Deltapack returned an order form on Deltapack letterhead, dated October 29, 2008 and titled "Order 08088/08," reflecting the new sizes and quantities and noting that "[t]his quotation replaces and voids the previous one." Mr. Gray, from Jungle Growth's offices in Georgia, confirmed the order for 800,000 bags by sending an e-mail agreeing to the prices set out in the October 2008 form and by signing the order form sent by Deltapack.[1] (Doc. #96-1, Pl.'s Ex. 1 (copy of Order form).) This form does not include

---

[1] The product is described as "Heavy Duty/Laminated structure/Longitudinal & Side Seal/Color Process Printing Provided with U.V.I. Inhibitors for film and inks." Ten different sizes of various products are listed on the form. The delivery and payment terms are designated as "TO BE DETERMINED." (Doc. #96-1, Pl.'s Ex.

a specific reference to shipping costs, and notes that delivery is "To Be Determined." The form also does not include a reference to the cost of printing plates. In addition to the 800,000 bags on the October 2008 form, Deltapack contends that additional bags were ordered by Jungle Growth in the Spring of 2009, as reflected on a spreadsheet sent by Deltapack to Jungle Growth, and were shipped to Jungle Growth in 2009 and invoiced in September and October 2009.[2]

Jungle Growth contends that Deltapack shipped more bags than had been ordered. (Gray Dep. [Doc. #96-1] at 149-50.) Mr. Gray testified that he spoke with Ana Machovec regarding the overshipment and agreed that Jungle Growth would take the bags that were in production but would not pay for the bags until it used them. (Id. at 150.)[3] Ms. Machovec denies that Deltapack ever agreed that Jungle Growth would not have to pay for these bags until they were used. Ms. Machovec further notes that Deltapack ceased production on those orders as soon as requested by Jungle Growth. (Machovec Dep. [Doc. #91-1] at 74.) Deltapack seeks to recover amounts due for the additional bags shipped to and accepted by Jungle Growth in 2009. (Id. at 57-58.)

Deltapack also seeks to recover the air freight costs for shipments sent via air at Jungle Growth's request, based on Deltapack's contention that only ocean freight was included in the

---

1.)

[2] In an email dated April 7, 2009, Ana Machovec of Deltapack writes to Mr. Gray of Jungle Growth confirming "some of the things we discussed yesterday" including a "current order in production" and stating that Deltapack "will be duplicating order above, as a new order, for delivery in about 90-100 days. This order completes the blanket order from Nov. 2008." (Machovec Decl. Ex. C [Doc. #14-4] at 29.)

[3] Mr. Gray said that Jungle Growth was still using Deltapack bags as of his deposition in February 2013. (Doc. #96-1 at 146.) Mr. Gray testified that although Jungle Growth continued to use the bags, it had stopped making payments to Deltapack due to the issues with the "bad bags." (Id. at 152.)

October 2008 prices. (Id. at 60.) Finally, Deltapack seeks to recover the cost of the printing plates. As to this claim, Mr. Gray testified that Jorge Rievers of Deltapack had never before, in their six or seven years of doing business together, asked him to pay for the cost of printing plates used in printing the bags. However, Mr. Gray testified that for the 2008 order, Mr. Rievers told Mr. Gray that he needed Jungle Growth "to buy a three-year supply to pay for the plates." (Gray Dep. at 101.) Mr. Gray states that he told Mr. Rievers in November 2008 that if Deltapack could deliver on time, continue with the quality, and maintain the price, Mr. Gray would "have no problem doing business with you for three years, but if you can't maintain those three things, I'm going to have to go to another supplier. I'm not paying for plates," and that Mr. Rievers said, "okay." (Id. at 104-05.)

As noted above, in the present Motion for Summary Judgment, Jungle Growth contends that Deltapack's claims are barred by the statute of frauds under Georgia law, which it contends applies to the claims, because the claims are based on an agreement that is not reflected in a writing signed by Jungle Growth.

### 2. Choice of Law as to Deltapack's Claims

With respect to the choice of law for Deltapack's contract claims, Deltapack contends that North Carolina law applies, while Jungle Growth contends that Georgia law applies. In considering this question, the Court notes that with respect to contracts for the sale of goods, North Carolina and Georgia have both adopted the Uniform Commercial Code, and the statute of fraud provisions are identical. See N.C. Gen. Stat. § 25-2-201; Ga. Code Ann. § 11-2-201. Therefore, it appears that the result would be the same regardless of which state's law applies.

Nevertheless, to the extent the parties have addressed this issue, the Court notes that at this stage, it appears that Georgia law would apply. In this diversity action, this Court applies North Carolina choice-of-law rules. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Under North Carolina choice-of-law rules, "matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum." Boudreau v. Baughman, 368 S.E.2d 849, 853-54 (N.C. 1988). In contract cases, North Carolina generally applies the substantive law of the place where the contract was made. Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980); Tanglewood Land Co. v. Wood, 252 S.E.2d 546, 550 (N.C. Ct. App. 1979) (noting that "the substantive law of the State where the last act to make a binding contract takes place controls"). However, under the Uniform Commercial Code, North Carolina law applies "to transactions bearing an appropriate relation to this State." N.C. Gen. Stat. § 25-1-301. The North Carolina Supreme Court has interpreted "appropriate relation" to mean "most significant relationship." Boudreau, 368 S.E.2d at 855.

Based on the evidence presented at this time, it appears that Deltapack representatives traveled to Georgia on several occasions to meet with Jungle Growth officials regarding the agreement to supply bags to Jungle Growth. In addition, Deltapack's offers were accepted by Jungle Growth in Georgia, the goods were manufactured in Brazil and shipped to Georgia and

Florida, and it appears that Georgia is the location with the most significant relationship to the transaction.[4]  Therefore, for the purposes of this motion, the Court will apply Georgia law.

3.      Statute of Frauds

In support of the Motion for Summary Judgment, Defendant cites to the general Georgia statute of frauds, Ga. Code Ann. § 13-5-30 (2012), but the parties have not addressed the provisions of the statute of frauds contained in the Uniform Commercial Code in Georgia, Ga. Code Ann. § 11-2-201, applicable to contracts for the sale of goods.  Under § 11-2-201, "a contract for the sale of goods for the price of $500.00 or more" requires "some writing sufficient to indicate that a contract for sale has been made between the parties" and either "signed by the party against whom enforcement is sought" or, between merchants, that "a writing in confirmation of the contract and sufficient against the sender is received."  However, the contract is not enforceable "beyond the quantity of goods shown in such writing."

Even if this provision is not satisfied, a contract is nevertheless enforceable "(a) If the goods are to be specially manufactured for the buyer . . . [and the seller] has made either a substantial beginning of their manufacture or commitments for their procurement; or (b) If the party against whom enforcement is sought admits in his pleading . . . that a contract for sale was made . . . or (c) With respect to goods for which payment has been made and accepted or which have been received and accepted."   Ga. Code Ann. § 11-2-201.

---

[4] Indeed, in Deltapack's own Motion for Summary Judgment, albeit as to the unfair trade practices claim, Deltapack agrees that "the parties' relationship was centered in Georgia more so than North Carolina" and under the "most significant relationship" test, Georgia law would control.

In the present case, as to Deltapack's claim for payment on additional bags shipped and received as reflected in September and October 2009 invoices, the Court notes that the quantity shown in the written October 2008 Order Form is a total of 800,000 bags. Thus, that writing would not be enforceable above the 800,000 quantity under the statute of frauds, and it is not clear from the evidence presented whether any of the additional orders were reflected in a subsequent writing. Nevertheless, even if the subsequent orders are not otherwise sufficiently reflected by a writing, an agreement to purchase additional amounts would still be enforceable to the extent that the bags were specially manufactured for Jungle Growth, and/or to the extent that the goods were received and accepted. The remaining claim for air freight charges and printing plate charges arise out of the same agreement between the parties, based on the October 2008 orders and the alleged subsequent orders, and relate to disputed terms of that agreement.[5] Thus, the Court cannot conclude as a matter of law that the UCC statute of frauds would bar Deltapack's claims.

Finally, the Court notes that to the extent Defendant insists that Georgia's general statute of frauds applies in this case, even if that were correct, the Court would not find that Deltapack's claims are barred as a matter of law. Georgia Code Ann. § 13-5-30 states that with respect to "any agreement that is not to be performed within one year from the making thereof," to be binding on the promisor, "the promise must be in writing and signed by the party to be charged therewith or some person lawfully authorized by him." However, the "provisions of Code

_____

[5] The parties have not addressed any issues regarding whether disputed terms would be considered part of the agreement under other provisions of the UCC, and the Court will not raise those issues *sua sponte*.

11

Section 13-5-30 do not extend to the following cases: (1) When the contract has been fully executed; (2) Where there has been performance on one side, accepted by the other in accordance with the contract; (3) Where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance." Ga. Code Ann. § 13-5-31 (2012). In the present case, as to the claim for payment on additional bags allegedly ordered in the Spring of 2009 and shipped and received later in 2009, those purchases were intended to be performed within a year and would not require a writing. In addition, as to the air freight charges, Deltapack contends that the prices quoted covered only ocean freight, and additional charges for air freight were incurred when Jungle Growth requested expedited shipping on specific occasions, which also would have been performed within a year. Finally, to the extent Deltapack claims the costs of printing plates, that claim is based on an alleged agreement that Deltapack would absorb the costs of the printing plates if Jungle Growth continued to purchase bags for three years, and as to that alleged agreement, there is evidence from which a jury could find that Deltapack either performed under the contract by shipping bags accepted by Jungle Growth under the agreement, or that Deltapack at least partially performed as provided in § 13-5-31(3). See Inv. Properties Co. v. Watson, 628 S.E.2d 155, 159-60 (Ga. Ct. App. 2006) (whether there has been part performance sufficient to avoid statute of frauds is a jury question). Therefore, even if § 13-5-30 is considered as Defendant contends, Deltapack's claims should not be dismissed at this stage as barred by the Georgia statute of frauds.

Jungle Growth's argument for release of the attachment and bond is based upon its argument that Deltapack's claims should be dismissed under the statute of frauds. Because this Court will not recommend dismissal of Deltapack's claims based on Jungle Growth's statute of frauds' argument, there is no basis to release the attachment and bond. Accordingly, Jungle Growth's Motion for Summary Judgment should be denied.

B.     Motion for Summary Judgment of Deltapack, Ms. Machovec, and Mr. Rievers

Deltapack, Ms. Machovec, and Mr. Rievers (the "Counterclaim Defendants") move for summary judgment [Doc. #76] on Jungle Growth's counterclaims for fraud and unfair or deceptive trade practices. With respect to these claims, Jungle Growth contends that during visits to Jungle Growth's facilities in Georgia, Mr. Rievers and Ms. Machovec told Mr. Gray that they could supply bags that would "perform better" than Jungle Growth's current bag supplier and that they "would not charge for plates or shipping." Jungle Growth experienced breaking of some trial bags, and Jungle Growth contends that during a visit to Georgia in 2008, Mr. Rievers and Ms. Machovec said that "the defective bags were part of a bad lot" and that they would "never again ship bags that broke."

With respect to the ultraviolet light protection for the bags, Mr. Gray contends that Deltapack provided a bag "with less UV" than what Jungle Growth requested. Mr. Gray testified that Jungle Growth "had bags in house that [were] high quality bags that we were buying already" which were "UV protected for one year." (Gray Dep. at 84-85.) He stated that Jungle Growth "made sure that everybody knew what that was, and they said they could match up with it, with exactly what it was." Mr. Gray said that he told all of the vendors that he

currently had 12-month UV protection, and further testified that 12-month UV protection was the "industry standard." (Id. at 86). However, the October 29, 2008 Order Form contains the dimensions and prices for the various sizes of bags to be provided by Deltapack, and notes that the product is "Heavy Duty/Laminate structure/Longitudinal & Side Seal/Color Process Printing Provided with U.V.I. inhibitors for film and inks," but does not specify a particular level of ultraviolet light protection for the bags. Ms. Machovec testified that it was Deltapack's understanding that bags produced pursuant to Jungle Growth's October 2008 order would have the same UV protection as the trial bags, which was for 6 months, which she contends was the industry standard. (Machovec Dep. at 45-47.) In addition, Ms. Machovec noted that sales of bags from Ms. Machovec's and Mr. Riever's prior company, ProPlast, to Mitch Gray at Jungle Growth's predecessor, Piedmont Pacific, Inc., had a UVI of 6 months. (Machovec Decl. Ex. 1 [Doc. #14-1].)

In the Spring of 2009, Jungle Growth received complaints that the "Tree and Shrub" bag was fading within 30 days of exposure to the sun. (Gray Dep. at 105.) In response, Deltapack concluded that the problem was due to a lot of defective red ink, credited Jungle Growth for the cost of at least some of the bags, and shipped replacement bags. (Id. at 106.) Jungle Growth contends that Ms. Machovec assured Mr. Gray that the bags, once the defective ink was corrected, contained "enough UV protection to handle Florida" and that Deltapack would "credit Jungle Growth for the defective bags." In August 2009, Mr. Gray, Mr. Rievers, and Ana Machovec visited the manufacturing plant in Brazil where the bags were manufactured, to investigate similar concerns as to other bags. Deltapack and the manufacturing plant attributed

14

the problem to the earlier lot of defective red ink, and that they would "fix all defects associated with the bags." (Id. at 129-31.)  In her deposition, Ms. Machovec acknowledged the problem of the fading red ink on the Tree and Shrub bags supplied to Jungle Growth.  (Machovec Dep. at 49.)  She said that the plant set aside the ink used to make that lot of bags and procured a new lot of ink.  (Id. at 49.)  She testified that subsequent lots of those bags were produced with the accurate UV ink.  (Id. at 51.)  She stated that after this complaint, Jungle Growth had another complaint about the bags breaking.  She testified that she followed up with the plant manager of one of Jungle Growth's locations, who told her that it was "an isolated issue that maybe affected ten to 20 bags." (Id. at 53.)  She relayed this to the Brazil plant, and individuals there explained that this could be caused by a machine not being properly adjusted at the beginning or end of a run.  According to Ms. Machovec, these two issues, the red ink fading and the isolated breaking, were the only two issues that Deltapack knew of prior to the filing of this action with respect to the bags covered by Jungle Growth's October 2008 order. (Id. at 56.)

      1.     Fraud

With respect to Jungle Growth's fraud claim, Jungle Growth contends that Georgia law controls this claim, while the Counterclaim Defendants contend that North Carolina law controls on the fraud claim.  As noted above, this Court applies North Carolina choice-of-law rules.  Klaxon Co., 313 U.S. at 496.  Under North Carolina choice of law principles, the law of the state where the injury occurred controls for tort claims.  North Carolina Mut. Life Ins. Co. v. McKinley Fin. Serv. Inc., 386 F. Supp. 2d 648, 658 (M.D.N.C. 2005).  An injury occurs in the state where the last event took place that is necessary to render the actor liable for the tort.  Id.

15

For a fraud claim, the last event is the injury to the plaintiff, which occurs in the state in which the plaintiff suffered an economic impact. Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 554, 555 (M.D.N.C. 1999). In the present action, Jungle Growth has presented evidence that any injuries it suffered occurred in the state where Jungle Growth is based, which is Georgia. Therefore, the Court will consider Jungle Growth's fraud claim under Georgia law.[6]

Under Georgia law, "[f]or a claim of actual fraud to survive summary judgment, some evidence must support each of the following five elements: a false representation by the defendant, scienter, intent to induce plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." Aliabadi v. McCar Dev. Corp., 547 S.E.2d 607, 610 (Ga. Ct. App. 2001). The representation made by the defendant must not "consist[] of general commendations or mere expressions of opinion, hope, expectation and the like" because the party to whom such representation is made "is not justified in relying upon it." Anderson v. Atlanta Comm. for Olympic Games, Inc., 584 S.E.2d 16, 21 (Ga. Ct. App. 2003) (statement that Atlanta would be the safest place on earth during the Games not actionable). Moreover, the representation must "relate to an existing fact or a past event." Fuller v. Perry, 476 S.E.2d 793, 796 (Ga. Ct. App. 1996) ("Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. . . . Representations concerning expectations and

---

[6] In its opening brief, the Counterclaim Defendants rely upon North Carolina law on fraud to support the motion for summary judgment on Jungle Growth's fraud claim. However, in its Reply Brief, Deltapack argues for summary judgment on the fraud claim based upon Georgia law. Jungle Growth applied Georgia law in its Response Brief and did not seek leave to respond to any of the arguments raised by the Counterclaim Defendants in their Reply Brief. Therefore, the Court will consider the arguments of Counterclaim Defendants under Georgia law.

hopes are not actionable." (internal quotations omitted)); <u>see</u> <u>Home Depot U.S.A., Inc. v.</u> <u>Wabash Nat'l Corp.</u>, 724 S.E.2d 53, 61 n.4 (Ga. Ct. App. 2012) (representations that trailer would "never rust in its lifetime" and should have "no problem" remaining operable for "10 to 14 or 15 years" were "mere opinions, expectations, and predictions of the future and thus could not serve as the basis for either a fraud or a negligent misrepresentation claim").

Georgia courts recognize that proof of fraud may be established by circumstantial evidence. <u>Lloyd v. Kramer</u>, 503 S.E.2d 632, 633 (Ga. Ct. App. 1998). However, "for an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort" and "[w]here there is no evidence of scienter, that is, that the false statement was knowingly made with false design, there can be no recovery." <u>Coffee Butler Serv., Inc. v. Sacha</u>, 430 S.E.2d 149, 151 (Ga. Ct. App. 1993) (internal quotations and parentheses omitted); <u>cf.</u> <u>Fuller v. Perry</u>, 476 S.E.2d at 796 (noting that "claims of fraud arising from a representation of a future event made with knowledge that it is false or intention not to perform may be actionable," but there must be evidence to support such a conclusion).

In its counterclaim for fraud, Jungle Growth relies upon alleged statements made by Ana Rievers Machovec and Jorge Rievers, and argues that Deltapack is both directly and vicariously liable. The statements outlined in the counterclaim concern primarily the quality of the bags that Deltapack would produce for Jungle Growth. Jungle Growth alleges that Ms. Machovec and Mr. Rievers told him in the Summer of 2007 (over a year before actual production of the bags) that Deltapack would supply bags that would "perform better" than Jungle Growth's current bag supplier. (Answer and Counterclaims [Doc. #35] at 11-12.) Jungle Growth also points to

17

statements by Ms. Machovec that the bags which broke were from a bad lot, that Deltapack would not ship such bags again, and that the bags had sufficient ultraviolet light protection to "handle Florida." (Id.) Finally, Jungle Growth points to certain statements by Ms. Machovec regarding actions that Deltapack would or would not take in the future, for example, that it would not charge Jungle Growth for printing plates or shipping, that Deltapack would credit Jungle Growth for defective bags, that defects in the bags would be fixed, and that Deltapack would not require payment from Jungle Growth for additional bags in 2009 until they were used. (Id.)

     None of these statements relied upon by Jungle Growth are proper bases for a fraud claim. To the extent that this claim is based on alleged statements by Ms. Machovec that Deltapack bags would "perform better" than other suppliers', that Deltapack would not ship bags that broke, and that the bags could "handle Florida" and "would not fade," these statements are "mere opinions, expectations, and predictions of the future." Likewise as to contentions regarding other disputed contract issues, that is, that Deltapack would not charge Jungle Growth for printing plates or shipping, would credit Jungle Growth for defective bags, and would not require payment from Jungle Growth for additional bags in 2009 until they were used, these disputes as to the contract terms would not form the basis for a fraud claim as to Ms. Machovec or Mr. Rievers.[7] In addition, as to all of these contentions, even if these assertions

---

[7] Of course, all of these contentions are part of the parties' breach of contract dispute, as to which there are disputed issues for trial, and neither party seeks summary judgment on those contract claims.

18

could be considered false representations, there is no evidence that Ms. Machovec or Mr. Rievers knew that the representations were false when made.[8]

With regard specifically to the ultraviolet light protection of the bags that Deltapack shipped to Jungle Growth, Ms. Machovec admits that Deltapack shipped bags with 6 months of UV protection, which is what she considered to be the industry standard. (Machovec Dep. [Doc. #91-1] at 44, 47.) In his declaration [Doc. #87-1 ¶ 6], Mr. Gray states that he "specifically required Deltapack only produce and sell bags to Jungle Growth that meet or exceed industry standards, which includes no breaking or fading for at least 12 months." There is no assertion, however, that Ms. Machovec or Mr. Rievers made a specific misrepresentation regarding the UV protection. The signed Order Form required only "Color Process Printing Provided with U.V.I. Inhibitors for film and inks," without any statement as to the longevity of such inhibitors or evidence of specifications that Deltapack misrepresented. Mr. Gray states that he required Deltapack to produce bags that meet or exceed industry standards, which to him meant 12 months of UV protection, but there is no evidence from which a jury could find a false representation or false statement that was knowingly made with false design, as necessary to make out a fraud claim under Georgia law.

Mr. Gray cited as the only other alleged deception the contention that Deltapack shipped Jungle Growth more bags than Jungle Growth ordered. (Gray Dep. [Doc. #96-1] at 254-55.)

---

[8] During Mr. Gray's deposition, when questioned about what evidence Jungle Growth had that Ms. Machovec and Mr. Rievers "knew that the quality of the bags were poor when they made that" representation, he answered "[n]one." (Gray Dep. [Doc. #96-1] at 248.) When pressed on what evidence there was that they knew at the time they made statements to him that the bags were of poor quality, he admitted that he did not "know what they thought." (Id.)

He said that he did not ship the bags back to Deltapack because he needed the bags and could not timely get them from another supplier. (Id. at 255-56.) There is no explanation, however, as to how this act of overshipping bags constitutes fraud, and the Court finds that it does not meet the elements for fraud set forth above.

In its brief [Doc. #85 at 3-5], Jungle Growth cites additional alleged fraudulent acts. In addition to the complaints concerning the condition of the bags, it alleges that Deltapack has not properly credited Jungle Growth's account for defective and overshipped bags. However, Mr. Gray testified that he believes Deltapack had given Jungle Growth some credit for defective bags. (Gray Dep. at 108). Jungle Growth does not cite any additional evidence showing that Deltapack intended not to properly account for the bags or that Mr. Rievers or Ms. Machovec made an intentionally false representation in this regard.[9]

Accordingly, Jungle Growth's counterclaims for fraud should be dismissed.

## 2. Unfair or Deceptive Trade Practices

Finally, the Counterclaim Defendants seek summary judgment as to Jungle Growth's counterclaim for unfair or deceptive trade practices. Jungle Growth pled this claim pursuant to North Carolina law. (See Answer and Counterclaims [Doc. #35] at 13-15 (citing only N.C. Gen. Stat. § 75-1.1).) In its Motion for Summary Judgment, Deltapack argues that this claim must fail because Georgia law applies to any such claim, and Georgia's unfair trade practices act applies

---

[9] The parties discuss whether Georgia courts would apply the economic loss doctrine to bar Jungle Growth's fraud claim. However, because there is no jury question presented on the elements of a fraud claim, the Court need not consider whether, if a fraud claim were supported by the evidence, it would be barred by that doctrine.

only to "consumer transactions and consumer acts or practices." Ga. Code Ann. § 10-1-393 (2012). In its Response Brief, Jungle Growth concedes that "Georgia does not have an unfair trade practices claim analogous to North Carolina's, so if Georgia law applies, as Jungle Growth contends, then it cannot prevail on its unfair and deceptive trade practice claim." (Opp. Br. [Doc. #85] at 18.) Therefore, although Jungle Growth pled only a violation of the North Carolina unfair or deceptive trade practices statute, it now concludes that Georgia law applies to its claim, and concedes that Georgia law does not support its claim. Accordingly, summary judgment should be granted to the Counterclaim Defendants on this counterclaim.[10]

## III. MOTION TO SEAL

Jungle Growth has also filed a Motion [Doc. #93] to seal documents designated as confidential by Lowe's Companies, Inc. The documents consist of the deposition of Mr. Gray [Doc. #96], the Rule 30(b)(6) deposition of Lowe's provided by Mr. Jeff Jackson [Doc. #97], and financial records of Lowe's [Doc. #94, #95]. The Fourth Circuit has established mandatory rules which the Court must follow prior to granting a motion to seal court documents. See Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 178 (4th Cir. 1988). Jungle Growth fails to engage in the proper analysis as set forth in Stone. Specifically, Jungle Growth fails to identify whether these documents are subject to the First Amendment or common law right of public

---

[10] The Court notes that even if North Carolina law applied, summary judgment should be granted on Jungle Growth's counterclaim, because Jungle Growth has not presented evidence of "substantial aggravating circumstances" as required to support a claim under the North Carolina statute. See Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).

access to the extent that they have been filed with the Court, and also fails to discuss the corresponding analysis for sealing such documents.

Therefore, Jungle Growth's motion will be denied, although the Court will allow the documents to remain provisionally sealed. They will be unsealed after 14 days from the date of this Order and Recommendation absent a renewed motion from Jungle Growth which discusses the relevant standard for sealing the documents. In addition, as required by the Supplemental Protective Order [Doc. #65] in this case, Jungle Growth must set forth why the documents must be filed, and must file redacted versions on the public docket. The Court notes that the financial records provided by Lowe's [Doc. #94, #95] and the Rule 30(b)(6) deposition of Lowe's [Doc. #97] primarily relate to possible damages issues that are not relevant to the motions now under consideration. Therefore, Jungle Growth may choose to withdraw those documents for purposes of the present Motions, and any issues with respect to sealing those records to the extent they may be used at trial would be a determination for the trial judge. Finally, as to Mr. Gray's deposition, it appears that at least portions of this document were previously filed on the public docket, and Defendant must specifically address the propriety of sealing a document already made public to the extent it seeks to do so.

IV.    CONCLUSION

IT IS THEREFORE RECOMMENDED that Jungle Growth's Motion for Summary Judgment and for Release of the Attachment and Bond [Doc. #74] be denied, and that the Motion for Summary Judgment by Counterclaim Defendants Deltapack, Ana Rievers Machovec

and Jorge Rievers as to Jungle Growth's counterclaims for fraud and unfair or deceptive trade practices [Doc. #76] be granted.

IT IS ORDERED that Jungle Growth's Motion to File Under Seal [Doc. #93] is DENIED as set forth above.

This, the 17th day of June, 2013.

                                    /s/ Joi Elizabeth Peake
                              United States Magistrate Judge